IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 10 2003

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

BETTY McQUAY,                               )
YOLANDA SIMMONS,                            )
CATHERINE ECKELKAMP, DAN RAY,               )
LINDA HENRY, CHRISTY RUSSELL,               )
KATHLEEN CONTORNO, and                      )
YVETTE PUGH,                                )
                                            )
          Plaintiffs,                       )
                                            )
vs.                                         )     Case No.: 4-01-CV-00661 WRW
                                            )
                                            )
AMERICAN INTERNATIONAL                      )
GROUP, INC. and AIG CLAIM SERVICES,         )
INC.,                                       )
                                            )
          Defendants.                       )

## DEFENDANTS' SUMMARY JUDGMENT REPLY BRIEF

### I.   INTRODUCTION

**There are no material facts in dispute here.  Only the law is being debated.**

Plaintiffs do not dispute the facts regarding their duties set out in Defendants' opening

brief (from Plaintiffs' own deposition testimony), and which are **identical** to the duties

performed by the adjusters found to be exempt by a binding 2002 DOL Opinion Letter and by a

litany of federal cases holding that claims adjusters are exempt **as a matter of law.**  Under the

admitted facts, and the applicable law, Plaintiffs are clearly exempt.

To avoid this result, and contrary to the FLSA's focus on the **duties** performed by the

individual employees at issue (see, e.g., 29 C.F.R. § 541.2), Plaintiffs insist that the focus should

be on the **identity of the employer** -- *i.e.*, they assert that they are not exempt because they work

for a claims adjusting company.  Plaintiffs, in short, are asking this Court to rule that while

claims adjusters for a moving company are exempt (Haywood, *infra*) and claims adjusters for an

insurance company are exempt (McAllister, *infra* and Blinston, *infra*), the very same claims adjusters performing the very same duties are **not** exempt if they work for a claims adjusting company hired by the moving company or the insurance company.  There is simply no basis in logic or law for this ridiculous assertion.

## II.   ANALYSIS

### A.   The 2002 DOL Opinion Letter Is Controlling Authority

Plaintiffs misstate the binding effect of the 2002 DOL Opinion Letter.  It is a fundamental principle of administrative law that an agency's "legislative" authority (*i.e.*, authority that a **statute explicitly delegates to an agency** to define statutory terms) is **binding law**, while an agency's "interpretive" authority (*i.e.*, where the statute does not explicitly delegate authority to define statutory terms and, as a result, the agency is merely interpreting a statute the same way a court would do so) is only entitled to a degree of deference.  E.g., Batterton v. Francis, 432 U.S. 416, 425, n. 9 (1977) (summarizing this fundamental principle and holding that § 407(a) of the Social Security Act "expressly delegated to the Secretary the power to prescribe standards for determining what constitutes 'unemployment'").

Plaintiffs attempt to blur the distinction between these two different types of agency authority.  In Auer v. Robbins, 519 U.S. 452, 461 (1997), the Supreme Court held that the DOL's opinion concerning Section 213(a)(1) of the FLSA was **controlling law** -- even when the DOL's opinion is only contained in an amicus brief -- because Section 213(a)(1) **explicitly delegates** to the DOL the authority to define the executive, administrative, and professional exemptions from overtime (29 U.S.C. § 213(a)(1)).  In short, Section 213(a)(1) explicitly grants to the DOL the authority to **define the exemptions**; accordingly, the DOL's opinions defining the exemptions are "legislative."  The 2002 DOL Opinion Letter finding that insurance claims adjusters are exempt under Section 213(a)(1) is, as in Auer, binding law.  Auer, 519 U.S. at 456, 461 (the

DOL's views on the scope of these exemptions -- in merely an amicus brief -- are binding unless

they are "plainly erroneous" because "[t]he FLSA grants the Secretary broad authority to 'define

and delimit' the scope of the exemption for executive, administrative, and professional

employees").

Neither Christensen v. Harris County, 529 U.S. 576 (2000), nor Skidmore v. Swift & Co.,

323 U.S. 134 (1944), is to the contrary. In each case, the DOL opinions were not binding

because they did not involve a statutory provision that had explicitly delegated legislative

authority to the DOL to define statutory terms -- instead, they merely involved the agency's

interpretive authority. Christensen involved an interpretation of Section 207(o)(5) (addresses

compensatory time) which, in sharp contrast to Section 213(a)(1), does not expressly delegate to

the DOL the authority to define its terms (i.e., compensatory time). Likewise, Skidmore

involved an interpretation of Section 207(a) (addresses maximum hours) that, too, does not

expressly delegate to the DOL the authority to define its terms (i.e., maximum hours).[1]

Moreover, contrary to Plaintiffs' contentions, Christensen does not stand for the

proposition that informal agency action (e.g., opinion letters) does not have the force and effect

of law. Christensen specifically **approved** Auer (529 U.S. at 588), and Auer had held that the

DOL's opinion set forth merely in an amicus brief concerning Section 213(a)(1) was **controlling**

---

[1] Plaintiffs' reliance on Jastremski v. Safeco Ins. Cos., 243 F. Supp.2d 743 (N.D. Ohio 2003), is self-defeating. Jastremski found the 2002 DOL Opinion Letter authoritative -- albeit under the 1944 Skidmore case rather than under Auer (but without discussion of either Auer or its statutory basis in the express delegation of legislative authority set forth in Section 213(a)(1)) -- and, thus, found that the claims adjusters there were exempt as a matter of law. Jastremski, in short, supports neither Plaintiffs' contention that the 2002 DOL Opinion Letter should not be followed nor their bottom line contention that their jobs are not exempt.

law unless "plainly erroneous." <u>Auer</u>, 519 U.S. at 461. Likewise, subsequent Supreme Court

cases further validate <u>Auer</u>: "the fact that the Agency previously reached its interpretation

through means less formal than 'notice and comment' rulemaking... does not automatically

deprive that interpretation of the judicial deference otherwise its due." <u>Barnhart v. Walton</u>, 535

U.S. 212, 222 (2002)(where the Court added the following death knell to Plaintiffs' contention:

"If this Court's opinion in <u>Christensen</u>... suggested an absolute rule to the contrary, our later

opinion in <u>United States v. Mead Corp</u>, 533 U.S. 218 . . . (2001), denied the suggestion . . . [by]

point[ing] to instances in which the Court has applied <u>Chevron</u> deference to agency

interpretations that did not emerge out of notice-and-comment rule making").

In addition, the 2002 DOL Opinion Letter is analytically sound:

- In determining that insurance claims adjusters are administratively exempt,
the 2002 DOL Opinion Letter relies upon <u>Palacio v. Progressive Insurance
Co.</u>, 244 F. Supp.2d 1040 (C.D. Cal. 2002), (which in turn relies upon
<u>Haywood v. North American Van Lines</u>, 121 F.3d 1066 (7th Cir. 1997), and
distinguishes both <u>Bratt v. County of Los Angeles</u>, 912 F.2d 1066 (9th Cir.
Cal. 1990) and <u>Bell v. Farmers Ins. Exch.</u>, 87 Cal. App. 4th 805 (Cal. App.
2001)). <u>Haywood</u>, in turn, cites, <u>Reich v. AIAC</u>, 902 F. Supp. 321 (D. Conn.
1994), which highlights the distinction between appraisers (no settlement
authority/nonexempt) and adjusters (settlement authority/exempt). In short,
Plaintiffs' assertion that the 2002 DOL Opinion Letter ignored existing case
law is just wrong.

- In determining that insurance claims adjusters are administratively exempt, the
2002 DOL Opinion Letter merely caps a litany of prior DOL opinions
reaching the same conclusion that insurance claims adjusters are **exempt**.
See, e.g., 1957 DOL Memorandum (Oct. 24, 1957); 1962 DOL WH Admin.
Opinion Letter (Dec. 18, 1962); 1967 DOL WH Admin. Opinion Letter
(March 14, 1967); 1980 DOL WH Admin. Opinion Letter (April 18, 1980);
1984 DOL WH Admin. Opinion Letter (Jan. 4, 1984); 1985 DOL WH Admin.
Opinion Letter (Oct. 29, 1985); and 1995 DOL WH Admin. Opinion Letter
(June 21, 1995) (all opinion letters contained in Defendants' Summary

Judgment Reply Brief Appendix, hereinafter "Reply Appendix," Ex. A).
Plaintiffs' assertion that the 2002 DOL Opinion Letter is a departure from
prior DOL opinions is another canard.[2]

**B.      Plaintiffs' Primary Duty Admittedly Is Directly Related To The General
Business Operations Of, And Substantially Important to, AIGCS And Its
Customers**

**1.      Plaintiffs Perform Work of "Substantial Importance"**

Plaintiffs admit that, under the regulations, insurance claims adjusters meet the

"substantial importance" test. (Plaintiffs' Summary Judgment Response, p. 13) ("29 C.F.R. [§]

541.205(c)(5) [which specifically identifies "claims agents and adjusters"] discusses . . . whether

certain employees meet the 'substantial importance' prong of the administrative test").

Plaintiffs' only response is a few meaningless quibbles.

First, Plaintiffs assert that because the regulation states that "*many* persons employed as .

. . claims agents and adjusters" will meet the substantial importance test, a "few" adjusters may

not. (Plaintiffs' Summary Judgment Response, p. 13). Here, however, Plaintiffs' undisputed

settlement authorities of $50,000 to $150,000, and undisputed expenditures of $500,000 to

almost $4,000,000 a year (Defendants' Statement of Material Undisputed Facts, ¶¶ 10-12), put

them in the elite of the claims adjusting world. See, e.g., 2002 DOL Opinion Letter, pp. 3-5

(insurance adjusters' work of substantial importance because they had settlement authorities of

---

[2] Although Plaintiffs cite other DOL opinion letters (Plaintiffs' Summary Judgment Response, pp. 22-23), even a
cursory review of those opinion letters reveals the obvious: *none* even address the exempt status of claims adjusters;
*none* address -- much less contradict -- the DOL's precedents finding claims adjusters administratively exempt; and
*none* justify Plaintiffs' assertion that negotiating with claimants on behalf of the employer's customers is
"production." Moreover, Plaintiffs' references to other sections of the DOL's regulations are equally meaningless.
First, 29 C.F.R. § 541.205(c)(2) refers to "inspector" as an example of a non-exempt job which is a wholly different
job as is demonstrated by the subsequent reference in § 541.205(c)(5) to "adjusters" as an example of an *exempt* job.
Second, 29 C.F.R. §§ 778.403-405 address an alternate exemption for employees, including adjusters, who are not
paid on a salary basis -- an alternative that is wholly irrelevant here given Plaintiffs' admission of their salary status.

$3,000-$50,000); Haywood, 121 F.3d at 1072 (substantial importance test "easily met" because

plaintiff settled $100,000 in claims per year); Jastremski, 243 F. Supp. 2d at 754 (adjuster's

duties substantially important because he had $15,000 in settlement authority); Blinston v.

Hartford Accident and Indemnity Co., 441 F.2d 1365, 1366 (8th Cir. 1971) (claims adjuster with

$3,000 is exempt).

Second, Plaintiffs assert that a job is not of substantial importance merely because the

"poor performance" of that job may have a "significant profit-and-loss impact." (Plaintiffs'

Summary Judgment Response, pp. 17-18). This is true but irrelevant: here, Plaintiffs' work has

substantial importance not because a random mistake could be costly but because when Plaintiffs

perform their jobs **correctly** (e.g., negotiate settlements, evaluate compensability, set reserves,

provide good customer service, and expend claims funds (see Defendants' Statement of Material

Undisputed Facts, ¶¶ 4-8)), they perform work of substantial importance.[3] See 2002 DOL

Opinion Letter, p. 3 (setting reserves, determining liability and negotiating settlements is work of

"substantial importance"); Jastremski, 243 F. Supp.2d at 754 ("Plaintiff's job duties affected

business to a substantial degree, as contemplated by the regulations, because he was solely

responsible for negotiating a large number of large settlements"); Haywood,121 F.3d at 1072

(negotiating settlements of "substantial importance"); see also Defendants' Summary Judgment

Brief, pp. 22-23.

Finally, Plaintiffs' suggestion that only policy makers can perform work of substantial

importance is 100% wrong:

---

[3] Plaintiffs' plenary assertion that they "deny and controvert any and all material facts in Defendants' Statement of Material Facts to the extent that the facts relate to whether Plaintiffs are exempt" is -- given Plaintiffs' detailed deposition admissions -- sound without substance (Statement of Material Facts to Which a Genuine Issue Exists to Be Tried, p. 1; see also Plaintiffs' Summary Judgment Response to Defendants' Motion for Summary Judgment and Statement of Material Undisputed Facts, ¶¶1-16). See Chalmers Motors, Inc. v. Toyota Motor Sales USA, 1998 U.S. Dist. LEXIS 22538, *2, n.2 (E.D. Ark. Jan. 21, 1998) (plaintiff was "unsuccessful" in placing facts in dispute "because it has offered mere conclusions without any accompanying support in the record") (Reply Appendix, Ex. B); Horton v. American Railcar Indus., 214 F. Supp.2d 921, 922 (E.D. Ark. 2002) (same).

> The regulations interpreting whether work is of substantial importance provide
> that **the exemption is not limited to employees who participate in the**
> **formulation of management policies** or in the operation of the business as a
> whole.  Rather, it covers employees whose work affects policy or whose
> responsibility it is to execute or carry it out, including those whose work affects
> business operations to a substantial degree, even though their assignments are
> tasks related to the operation of a particular segment of the business. 29 C.F.R. §
> 541.205(c).  The regulations note that the standard for exempt work is met by
> many workers "employed as advisory specialists and consultants of various kinds,
> credit managers, safety directors, **claims agents and adjusters**, wage-rate
> analysts, tax experts, account executives of advertising agencies, customers'
> brokers in stock exchange firms, promotion men, and many others." 29 C.F.R. §
> 541.205(c).

2002 DOL Opinion Letter, p. 3 (emphasis added).  The regulations abound with further examples

of employees who perform work of sufficient importance to warrant exempt status but who do

not formulate policy, serve on the board of directors, or hire and fire employees:  *e.g.*, executive

secretaries, bank cashiers, and statisticians.  See 29 C.F.R. §§ 541.201(a)(1)-(3), 541.205(c) (3).

Indeed, **every** federal court to determine the issue has concurred that insurance adjusters are

exempt, even though adjusters do not formulate policy.  See, e.g., McAllister v. Transamerica

Occidental Life Ins. Co., 325 F.3d 997 (8th Cir. 2003) (affirming summary judgment on

exemption of insurance claims adjuster); Blinston, 441 F.2d 1365 (upholding the exempt status

of insurance claims adjuster); Jastremski, 243 F. Supp.2d at 754 (granting summary judgment;

plaintiff did work of substantial importance despite merely "describing himself as a cog in a

great machine" because "he was solely responsible for negotiating a large number of large

settlements"); Palacio, 244 F. Supp.2d at 1046 (granting summary judgment; "claims . . .

adjusters are of 'substantial importance' to a business").

### 2.   Plaintiffs Perform Work Directly Related to the General Business Operations of AIGCS and Its Customers

Plaintiffs assert that while claims adjusters working for an insurance company are

exempt, under Jastremski, 243 F. Supp. 2d 743, and Palacio, 244 F. Supp. 2d 1040, and claims

adjusters working for a business such as a moving company or an oil company are exempt, under

Haywood, 121 F.3d at 1072 and prior DOL opinion letters, claims adjusters working for a claims adjusting company are not exempt because such individuals are purportedly "production" workers.  In short, Plaintiffs assert the ridiculous proposition that a person is exempt from overtime if he worked for company A, but non-exempt if he worked for company B -- even though he performed identical duties at both companies: *i.e.*, they assert that the **identity of the employer** -- rather than the employees' job duties -- determine the exemption.  This illogical proposition -- which no case has ever accepted -- is bankrupt for numerous reasons.

First, Plaintiffs have treated both of the Defendants in this case -- AIGCS and AIG -- as a single enterprise.  See Amended Complaint, ¶ 1 ("Defendants (hereinafter referred to collectively as 'Defendant AIG')"); see also id., ¶¶ 4, 6, 7, 8 (alleging that each named Plaintiff is or was "employed by Defendant AIG") and Plaintiffs' Summary Judgment Response, p. 1 (noting that "Defendants American International Group, Inc. and AIG Claim Services, Inc. [will be] collectively [referred to as] 'AIG'").  While AIGCS is indeed in the business of adjusting claims, Plaintiffs, themselves, assert that its parent, AIG, sells insurance (see Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Collective Action, p. 1).  Thus, here, Plaintiffs' proposed distinction of Jastremski and Palacio does not fit; if, as Plaintiffs admit, Jastremski and Palacio are correctly decided, those cases dictate that these Plaintiffs, too, are administrative employees.

Second, as Plaintiffs' own cases recognize, the administrative-production dichotomy is not a rule of law.  It is "but one analytical tool, to be used only to the extent it clarifies the analysis." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1127 (9th Cir. 2002) (the administrative-production dichotomy is "not . . . an end in itself" but is merely "a tool toward answering the ultimate question, whether work is directly related to management policies or general business operations"); Webster v. Public School Employees of Washington, 247 F.3d

8

910, 916 (9th Cir. 2001) ("The purpose of the dichotomy is to clarify the meaning of 'work

directly related to the management policies or general business operations,' not to frustrate the

purpose and spirit of the entire exemption") (internal citations omitted).  This is precisely why

both Edmund v. Crawford & Co., 1:95-CV-1310-JOF, slip op. at 23 (N.D. Ga. March 31, 1997)

(Defendants' Summary Judgment Appendix, Tab 10) and Chase v. Farmers Ins. Exchange, Case

No. 01 CV 4773 (May 22, 2003) (Reply Appendix, Ex. C) properly granted summary judgment

and held that insurance claims adjusters working for entities that, like AIGCS, **did only claims**

**adjusting** were exempt.  See also Proposed Regulation, 29 C.F.R. § 541.203(b)(2) (claims

adjusters are exempt regardless of "whether they work for an insurance company or other type of

company...") (Defendants' Summary Judgment Appendix, Tab 8).

Third, Plaintiffs' work for the **business customers** of AIGCS (*i.e.*, the insureds and the

insurance companies) makes them "administrative" rather than "production" workers.  See 29

C.F.R. § 541.2(a)(1) (the term "administrative . . . shall mean any employee" whose "primary

duty consists of . . . work directly related to . . . general business operations of his employer or

his **employer's customers** . . .") (emphasis added).  See also 29 C.F.R. §§ 541.205(a) & (d).

Bell v. Farmers Ins. Exchange, 87 Cal. App. 4th 805 (2001), Plaintiffs' lead case on production

explicitly recognized that providing services to **business customers** -- which is what AIGCS

does -- would entirely eliminate the "production" issue because the administrative exemption can

be based on the **business operations of the employer's customers** instead of the employer's

business operations. Id. at 826 (emphasis added).[4]

As Plaintiffs admit, AIGCS has two sets of customers: the underwriting subsidiaries of

AIG and the businesses who buy that insurance. See Plaintiffs' Summary Judgment Response,

p. 4 ("The primary customers for AIGCS are the AIG policy holder and the subsidiary

companies that write insurance policies for the customers whom AIGCS services"). Thus, the

requirement that Plaintiffs describe for administrative work -- that the work be "ancillary to [the

business's] principal production activity" (Plaintiffs' Summary Judgment Response, p. 14) --

perfectly describes Plaintiffs' work for AIGCS' customers. For example, McDonnell Douglas

manufactures weapons systems (Defendants' Summary Judgment Brief, p. 8, n. 4); Plaintiffs, in

handling McDonnell Douglas' claims, perform work ancillary to manufacturing weapons.

Likewise, AIGCS' insurance underwriting customers produce insurance policies; Plaintiffs'

claim handling services for those entities is "ancillary" to the "production" of those policies. See

2002 DOL Opinion Letter, pp. 2-3 ("Because these duties involve servicing the insurance

company in the same manner that claims adjusters traditionally have done so . . . we find that

their duties are administrative in nature").

---

[4] Plaintiffs' litany of cases -- upon inspection -- are absolutely irrelevant. Bell (a decision of a California state court) is not only self-limiting but has been repeatedly rejected by the federal courts. See Palacio, 244 F. Supp.2d at 1040 (court denied defendant summary judgment on California state law based on Bell but granted summary judgment (and correctly ignored Bell) on FLSA claim); Jastremski, 243 F. Supp.2d at 753 ("to the extent that Bell suggests plaintiff was a production worker, I find that its limited persuasive authority is outweighed by Palacio and the Wage and Hour Division's [2002 Opinion] letter . . .") Moreover, two of their other cases, Reich, 902 F. Supp. 321 and Gusdonovich v. Business Information Co., 705 F. Supp. 262, 263 (W.D. Pa. 1985), do not even address claims adjusters but rather other distinct jobs which lacked autonomous settlement authority. See Reich, 902 F. Supp. at 324 n.3 (damage appraisers: "[a]lthough the defendant cited various cases and statutes concerning insurance adjusters, the court concludes that these references have limited value because of the difference in the nature of the two jobs, i.e., adjusters and appraisers"); Gusdonovich, 705 F. Supp. at 263 (plaintiff was an "investigator" whose "primary duty was the investigation of insurance claims"). Finally, the jobs in Plaintiffs' remaining cases indisputably involved zero work on behalf of their employers' customers. See, e.g., Bratt v. County of Los Angeles, supra (plaintiffs were county probation and child protection officers who lacked business customers); Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991) (plaintiffs -- inside sales representatives -- "serviced" Cooper Electric's sales business -- rather than the business of its customers); Dalheim v. KDFW-TV, 918 F.2d 1220 (5th Cir. 1990) (plaintiffs-television news reporters did not have, or service, business customers, other than their employer).

Moreover, Plaintiffs' duties on behalf of both sets of customers -- setting reserves; determining compensability; providing customer service; and negotiating settlements (see Defendants' Statement of Material Undisputed Facts, ¶¶ 4-8) -- are classic administrative functions. See, e.g., 2002 DOL Opinion Letter, p. 3 (adjusters' "decisions as to fault or liability affect both the policyholders and the company's legal rights and obligations"); Palacio, 244 F. Supp.2d at 1047 (insurance adjuster who "regularly and continually represented [employer] during negotiations with attorneys and claimants. . . are servicing a business, and thus meet the 'directly related' test") (internal citations omitted); Jastremski, 243 F. Supp. 2d at 751 (insurance adjuster "planned how to handle insurance claims, and negotiated binding settlements with claimants while representing the company. Based on this definition alone, his duties appear to be administrative in nature").[5]

Finally, employees of a business engaged in furnishing specialized services for a fee are explicitly eligible for exempt status under the regulations even though their work is their employer's sole business. AIGCS is precisely such a specialty company and §541.205(d) -- which Plaintiffs have quoted incompletely -- is patently not limited as Plaintiffs contend to only those jobs identified in that regulation:

> **For example**, many bona fide administrative employees perform important functions as advisers and consultants but are employed by a company engaged in

---

[5] Plaintiffs' unsupported contention that they perform their duties on behalf of "AIG," but not the insureds (Plaintiffs' Summary Judgment Response, pp. 15-16) is belied by their own admissions. See, e.g., Ray Deposition, pp. 84-85 (agreeing that he was "handling this John Montgomery claim . . . on behalf of the insured and on behalf of AIGCS"); id., pp. 221-22 (agreeing that he joint petitioned a claim "[s]o that . . . AIGCS and Advance Polybag [the insured] would not be on the hook for any future medical payments") (Reply Appendix, Ex. D). Plaintiffs misrepresent the record in an effort to portray Scott Wetzel Servs., Inc. v. New York State Board of Industrial Appeals, 252 A.D.2d 212, 215 (1998) as analogous. Yet, Plaintiffs' own admissions render that state law decision inapposite. See Id. at 215 (Scott Wetzel "offered no evidence showing that the examiners' work was directly related to the management policies or general business operations of its customers"). Under the FLSA, adjusters for a service company, like AIGCS, who handle claims for customers are indeed exempt. See, e.g., Edmund v. Crawford & Co., supra. See also Proposed Regulation, 29 C.F.R. § 541.203(b)(2) (claims adjusters exempt regardless of "whether they work for an insurance company or other type of company...")(Defendants' Summary Judgment Appendix, Tab 8); Chase v. Farmers Ins. Exchange, supra (granting summary judgment to the same defendant that lost in Bell and holding -- in light of the 2002 DOL Opinion Letter -- that claims adjusters are properly classified as exempt).

> furnishing such services for a fee. **Typical instances** are tax experts, labor
> relations consultants, financial consultants, systems analysts, or resident buyers.
> Such employees, if they meet the other requirements of §541.2, qualify for
> exemption regardless of whether the management policies or general business
> operations to which their work is directly related are those of their employer's
> clients or customers or those of their employer.

See 29 C.F.R. §541.205(d) (emphasis added). Indeed, the primary duty Plaintiffs

perform for AIGCS' **customers** -- negotiating -- is the very work that Webster, 247 F.3d

at 912, found to be administrative work. Id. ("Webster spends most of his time negotiating

collective bargaining agreements. . ."); see also Piscione v. Ernst & Young, 171 F.3d 527, 542-

43 (7th Cir. 1999) (pension plan designer who was "client's primary contact" performed duties

directly "related to the general business operations of" Ernst & Young's clients).

### C.    Plaintiffs' Jobs Admittedly Include Work Requiring The Exercise of Discretion and Independent Judgment

Under the FLSA, the exercise of discretion and independent judgment "involves the

comparison and the evaluation of possible courses of conduct and acting or making a decision

after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Plaintiffs admit

that they do exactly that:

- Plaintiffs determine how they are going to use the resources given to them to **investigate** their claims (Defendants' Summary Judgment Brief, pp. 5-6);
- Plaintiffs establish an action **plan** for bringing the claim to conclusion (id., pp. 6-7);
- Plaintiffs **evaluate exposure** and **set reserves** (id., pp. 7-8);
- Plaintiffs evaluate and **determine liability** (id., pp. 8-11);
- Plaintiffs **negotiate** and **settle** claims (id., pp. 11-14); and
- Plaintiffs **manage litigation and outside counsel** (id., p. 15).

In addition, Plaintiffs' jobs need not "customarily or regularly" entail discretion and independent

judgment, but rather, need only **include** work requiring the exercise of such discretion. 29

C.F.R. § 541.2(e)(2). Munizza v. State Farm Mut. Automobile Ins. Co., 1996 U.S. App. LEXIS

32870, at *13 (9th Cir. Dec. 5, 1996) ("the job need only 'include' work requiring the exercise of

discretion and independent judgment to qualify the employee as exempt") (Defendants'

Summary Judgment Appendix, Tab 6).

Plaintiffs nonetheless assert that supervisors may -- on occasion -- "oversee," "veto,"

"supervise" or "review" Plaintiffs' judgment calls (Plaintiffs' Summary Judgment Response, pp.

4, 6, and 19), but that is irrelevant.  Under the FLSA, discretion and independent judgment "does

not necessarily imply that the decisions made by the employee must have a finality that goes

with unlimited authority and a complete absence of review.  The decisions made as a result of the

exercise of discretion and independent judgment "may consist of recommendations for action

rather than the actual taking of action." 29 C.F.R. § 541.207(e)(1).  See McAllister, 325 F.3d at

1001 (independent judgment and discretion "does not necessarily imply that the decisions made

by the employee must have a finality that goes with unlimited authority and a complete absence

of review.  The decisions made as a result of the exercise of discretion and independent judgment

may consist of recommendations for action rather than the actual taking of action"); Haywood,

121 F.3d at 1073 (employee's job description and deposition testimony showed she exercised

discretion and independent judgment, even though the employee's supervisors reviewed her

work).

Likewise, Plaintiffs' collateral assertion that their judgments are dictated by AIGCS'

"Best Practices" guidelines is disingenuous; **"Best Practices" is a three-page list of targets, not**

**detailed instructions.**[6]  (Dunn Deposition, pp. 28, 31-33, 45 & Ex. 4, Our Commitment to

---

[6] Plaintiffs misstate that "adjusters are taught from a *book* entitled 'Our Commitment to Workers' Compensation Best Practices'." Plaintiffs' Summary Judgment Response, p. 5 (emphasis added).  In fact, the "Best Practices" guidelines is a *three-page document* that is neither detailed nor a "how to" manual for adjusters. See Reply Appendix, Ex. F. "Best Practices" set forth only target objectives to "enhance the competitive position of our customers" as is demonstrated by sampling it:
- "Complete appropriate investigations to determine compensability and potential recovery."
- "Develop and continually assess/update the action plan to focus on the best claim results."
- "Reserves will reflect Probable Ultimate Cost (PUC) and will be continually evaluated during the life of the claim."

These generalities confirm the vast discretion given to Plaintiffs and admitted in their depositions.

Workers' Compensation Best Practices) (Reply Appendix, Exs. E and F). Moreover, beyond

being unfounded, this is the very same argument that <u>McAllister</u> squarely rejected. There, as

here, plaintiff argued that she did not exercise any discretion or independent judgment, but

simply was skilled in following detailed claims manuals. 325 F.3d at 1001. There, in affirming

summary judgment for her employer, the Eighth Circuit ruled that plaintiff "exercised her

discretion" in directing investigation of claims, settling claims up to $150,000, as well as

interpreting contract law and insurance statutes notwithstanding the fact that she "follow[ed]

detailed manuals." <u>Id</u>. The same conclusion is required here. <u>See also Murray v. Stuckey's,

Inc.</u>, 50 F.3d 564, 570 (1994)(8th Cir. 1991)(finding independent judgment and discretion "even

though the discretion usually associated" with certain tasks was "limited by the company's desire

for standardization").

## III.   CONCLUSION

For the reasons set forth herein and in Defendants' Summary Judgment Brief, the

undisputed facts and controlling law lead only to one conclusion: Plaintiffs are administrative

employees exempt from the FLSA's overtime requirements. Summary judgment should be

granted in favor of Defendants.

Respectfully submitted,

*Kathlyn Graves*

Kathlyn Graves
WRIGHT, LINDSEY & JENNINGS
200 W. Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201
(501) 371-0808

P. Kevin Connelly
James J. Oh
CONNELLY SHEEHAN MORAN
150 South Wacker Ave., Suite 1600
Chicago, Illinois 60606
(312) 372-1969

Allen I. Fagin
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
(212) 969-3000

Edward Cerasia II
Jennifer M. Cohen
Mary Elizabeth Deno
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
(973) 274-3200

Dated:  June 10, 2003

## CERTIFICATE OF SERVICE

I, Kathlyn Graves, an attorney, hereby certify that I served via U.S. mail, a true and

correct copy of the Defendants' Summary Judgment Reply Brief on this 10th day of June, 2003

upon the following:

Michael L. Roberts
Richard Quintus
Matthew C. Hutsell
ROBERTS, ROBERTS, & RUSSELL, P.A.
11311 Arcade Drive, Suite 104
P.O. Box 241790
Little Rock, AR  72223

Tom P. Thrash
THRASH LAW FIRM
1101 Garland Street
Little Rock, Arkansas 72201-1214

Charles Barrett
BARRETT LAW OFFICE, P.A.
3319 West End Avenue, Suite 600
Nashville, TN 37203

Don Barrett, P.A.
BARRETT LAW OFFICE
P.O. Box 987
Lexington, MS 39095

Elizabeth Cabraser
Hector Geribon
Eve H. Cervantez
LIEFF, CABRASER, HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street
30th Floor
San Francisco, CA 94111

_____
Kathlyn Graves

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BETTY McQUAY,                                    )
YOLANDA SIMMONS,                                 )
CATHERINE ECKELKAMP, DAN RAY,                    )
LINDA HENRY, CHRISTY RUSSELL,                    )
KATHLEEN CONTORNO, and                           )
YVETTE PUGH,                                     )
                                                 )
        Plaintiffs,                              )
                                                 )
vs.                                              )     Case No.: 4-01-CV-00661 WRW
                                                 )
                                                 )
AMERICAN INTERNATIONAL                           )
GROUP, INC. and AIG CLAIM SERVICES,              )
INC.,                                            )
                                                 )
        Defendants.                              )

**APPENDIX TO**
**DEFENDANTS' SUMMARY JUDGMENT REPLY BRIEF**

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Courts's Case File*